# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**      **CASE NO.  6:19-CR-00345-01**

**VERSUS**                      **MAGISTRATE JUDGE HANNA**

**KAENON A CONSTANTIN (01)**

## MEMORANDUM RULING

Before the Court is Defendant's Objection to Second Revised Presentence Report. (Rec. Doc. 59). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the Court holds that Defendant must pay restitution as part of his sentence.

## Factual Background

In November 2019, Kaenon Constantin was charged by Bill of Information with one count of violating the Lacey Act, 16 U.S.C. §§3372(a)(1) and 3373(d)(2), a misdemeanor. Count 1 provides that Constantin did knowingly transport the carcass and severed legs of a whooping crane when he knew or should have known the wildlife was taken and possessed unlawfully. (Rec. Doc. 1). He consented to proceed before the undersigned. (Rec. Doc. 10). On July 30, 2020, Constantin pled guilty to Count 1. (Rec. Doc. 44; 61).

In the stipulated factual basis for his guilty plea, Constantin admitted that in May 2016 he, along with a juvenile, shot two whooping cranes with a .22 caliber

rifle. One bird, "L5-15" fell dead in the field. Constantin and the juvenile retrieved the carcass and transported it to the juvenile's house where they severed its legs and removed its transponders. Constantin and the juvenile then discarded the knife, carcass, severed legs, and transponders. Investigators later recovered the carcass of the other crane, "L3-15." Constantin admitted that these facts were true. (Rec. Doc. 44-2; 61, p. 13-14).

This Court proceeded with sentencing immediately following Constantin's guilty plea hearing by video teleconference on July 30, 2020. Prior to sentencing Defendant, the Court considered the Pre-Sentence Investigation Report ("PSR") (Rec. Doc. 38 and 41), Pre-Sentence Memoranda from the parties (Rec. Doc. 39 and 40), and correspondence from the Louisiana Department of Wildlife and Fisheries (LDWF), among numerous other interested organizations and concerned citizens. The PSR did not include the payment of restitution as a possible sentence as required by 18 U.S.C. 3664, and the author of the PSR was not available at the time of the hearing.

After considering the voluminous material received and the facts in the record, the Court sentenced Defendant to sixty (60) months of unsupervised probation, a fine of $10,000 and special assessment of $25, due immediately, the payment of restitution in the amount of $75,000, payable over a 60-month period of probation, and conditions of probation including 360 hours of community service approved by

the LDWF, and a prohibition against hunting during that period. (Rec. Doc. 43). The Court further gave the parties thirty days to brief the Court's imposition of restitution. (Rec. Doc. 43; 61, p. 41-42). The Court specifically did not enter judgment on the sentence, pending consideration of the parties' positions vis-à-vis restitution, and the opportunity for the probation officer to amend the PSR, or provide a separate report as per the requirements of section 3664(a). (Rec. Docs. 50-51)[1].

Subsequent to the sentencing, Defendant filed an appeal of the sentence based upon, *inter alia*, "the restitution order and amount [which] came as a complete surprise." (Rec. Doc. 47, ¶6). The appeal has not been processed pending entry of a final judgment, which, again, this Court explicitly did not enter because there was no mention of restitution as a possibility included in the PSR. Defendant also filed a Memorandum to Remove Restitution Order. (Rec. Doc. 49). Thereafter, the Court instructed the parties to file briefs setting forth their positions on the availability and amount of restitution, after which the Court would consider their arguments and input from Probation **before** entering a final judgment on the sentence and allowing appeal delays to commence. (Rec. Doc. 51).

---

[1] The Court notes the transcript indicates that the Court was "going to render judgment" on the restitution on the day of sentencing at page 38 of Rec. Doc. 61. Whether that is a transcription error or a misstatement is not determined at this point, however, it was never the intention of this Court to render judgment on the restitution order as it had not been mentioned in the PSR as required by section 3664.

In the meantime, the Probation Officer and author of the PSR submitted a revised PSR identifying 18 U.S.C. §3563(b)(2) as a statutory provision authorizing payment of restitution as a condition of supervision and further identifying LDWF as a victim to whom $75,000 in restitution was owed. (Rec. Doc. 54). Defendant objected to the revised PSR on the following grounds: 1) restitution was not authorized for a Lacey Act violation; 2) Defendant did not plead guilty to killing a whooping crane—only transporting its carcass, and that transporting cannot be linked to identifiable damages of LDWF; and 3) Defendant had no notice that he would be subject to a restitution order. (Rec. Doc. 57).

In a Second Addendum to the PSR, the Probation Officer responded to Defendant's objections and provided a Declaration of Victim Losses from Jack Montoucet, Secretary of LDWF, with an attached spreadsheet itemizing Whooping Crane Expenses from November 2015 through May 2016. (Rec. Doc. 58). Defendant objected to the Second PSR on the same grounds and further objected to the amount of restitution set forth in the LDWF's Declaration. (Rec. Doc. 59). Defendant also, pursuant to this Court's order, filed a Proposed Plan of Work in which he urged the Court to issue a written ruling on the issue of restitution and to thereafter set a hearing, pursuant to which the Government would be ordered to produce certain documents and evidence relevant to the restitution order and allow for a hearing to cross examine the government's witness and traverse the evidence. (Rec. Doc. 60).

4

The Court now issues this written ruling addressing each of Defendant's objections to the order of restitution.

## Law and Analysis

In preface to addressing Defendant's particular objections, the Court acknowledges that F.R.Cr.P. Rule 32(c)(1)(B) and 18 U.S.C. §3664 require that "[i]f the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution." Rule 32(c)(1)(B). The initial PSR did not provide for the availability of restitution in this case. (Rec. Doc. 41, p. 11). The Probation Officer who authored the report was not available at the time of the sentencing. Therefore, the Court requested an amended PSR and provided the parties the opportunity to object to the amended PSR and to fully brief their positions on restitution. (Rec. Doc. 61, p. 38). The Probation Officer thereafter submitted two amendments to the PSR which provided for the availability and amount of restitution. (Rec. Doc. 54 and 58). Defendant objected to the amended PSR on the grounds hereinafter discussed.

## I.   Statutory Authorization for Order of Restitution.

Defendant first argued in opposition to the restitution order that restitution was not statutorily authorized in this case. Contrary to his argument, Defendant's counsel stated at the sentencing hearing: "I think you do have the ability to order restitution in the case." (Rec. Doc. 61, p. 16). He further argued that Defendant's

sentence should include the minimum fine of $2,000 and restitution "to go towards education." (*Id.* at 31.) Notwithstanding that Defendant may have waived his objection in this regard, the Court finds that statutory authorization supports the restitution award in this case.

"A federal court cannot order restitution except when authorized by statute." *United States v. Love,* 431 F.3d 477, 479 (5th Cir.2005). The court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with §3663A, and may order restitution in accordance with §3663. 18 U.S.C. §3556. The Mandatory Victim Restitution Act ("MVRA"), set forth in 18 U.S.C. §3663A, authorizes an order for payment of restitution by a defendant convicted of a misdemeanor as a penalty "in addition to or in lieu of, any other penalty authorized by the law. §3663A(a)(1). The statute applies to all sentencing proceedings for convictions, or plea agreements relating to charges for, any offense in which an identifiable victim or victims has suffered a physical injury or pecuniary loss. §3663A(c)(1)(B).

"[T]he term 'victim' means a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). Under the MVRA "[r]estitution is limited to the loss actually caused by the offense of conviction, the time span of which is defined by the '*specific* temporal scope' of the indictment." *United States v. DeLeon,* 728 F.3d 500, 507 (5th Cir.2013) (emphasis in original).

Although the Fifth Circuit has not yet considered whether restitution is applicable to Lacey Act offenses, several other circuits have considered the issue and found in the affirmative. For instance, in *United States v. Butler*, the Tenth Circuit affirmed an award of restitution against the defendants who committed several Lacey Act violations while operating a deer hunting guide service. *United States v. Butler*, 694 F.3d 1177, 1183–84 (10th Cir. 2012). The court held that "committing harm against the wildlife in a state is tantamount to committing harm against that state's property for the purposes of the MVRA." *Id*. The court further reasoned, "[b]ecause wildlife is property of the state, and the state can be a victim under the MVRA, it follows that," restitution to the state is appropriate. In that case, the state of Kansas suffered identifiable harm in that it was unable to accurately manage its deer population, leading to overharvesting. *Id*.

See also *United States v. Bengis*, 631 F.3d 33, 40–41 (2d Cir. 2011) (finding that South Africa had a property interest in illegally harvested rock lobsters and was a victim for which it was entitled to restitution); and  *United States v. Bruce*, 437 F. App'x 357, 367 (6th Cir. 2011) ("[S]tate agencies [] can be considered victims entitled to restitution" for Lacey Act violations.) To the extent the foregoing cases did not consider misdemeanors, the Court highlights the language of §3663A(a)(1), which explicitly authorizes restitution in the case of a misdemeanor "in addition to or in lieu of, any other penalty."

In an effort to restore the nearly extinct whooping crane population to the wild in Louisiana on behalf of the citizens of the State of Louisiana, LDWF partnered with private foundations to invest significant amounts of time, resources and money. Prior to sentencing, the Secretary of the LDWF, Jack Montoucet, sent correspondence to the Court stating that LDWF and its partners estimated the cost to hatch, raise, and release an individual bird to be $85,000, and Louisiana's cost for whooping crane restoration was estimated to be over $450,000 annually. (Rec. Doc. 42, p. 1). In addition, the Court received letters from the International Whooping Crane Foundation (which stated the cost of raising, releasing, and monitoring a whooping crane is $93,701.67 per bird) (Rec. Doc. 42, p. 12), the Louisiana Wildlife Federation (which estimated the cost to raise a bird from egg to release costs $94,000 per bird) (Rec. Doc. 42, p. 11), the Orleans Audubon Society (which estimated the cost to raise each bird at "nearly $100,000") (Rec. Doc. 42, p. 4), and the Louisiana National Audubon Society (which estimated the cost to be about $110,000 to raise and release each bird) (Rec. Doc. 42, p. 10).  Secretary Montoucet later provided an itemized spreadsheet identifying specific costs pertaining to whooping cranes. (Rec. Doc. 58-2). With the offense admittedly committed by Defendant, while this Court does not, and perhaps cannot, put a "value" on a bird such as the whooping crane, the State of Louisiana literally lost all of its investment in L5-15 and the potential benefit L5-15 could have brought to the citizens of the state had it survived,

flourished, and more importantly, procreated.  Thus, the Court finds LDWF, in its capacity as the agency of the State of Louisiana that invested in the effort to restore the whooping crane population to the wild in Louisiana, was directly and proximately harmed by the commission of the offense by the defendant, and therefore, is an identifiable victim who has sustained pecuniary loss and is thus entitled to restitution under the MVRA. Defendant has not presented any convincing arguments that restitution is not authorized in this case.

Restitution is also authorized under 18 U.S.C. §3563(a)(6) as a mandatory condition of probation in accordance §3663A, which this Court finds applicable to this case. Restitution would also be available as a discretionary condition of probation pursuant to §3563(B)(2). This provision incorporates the restitution provisions of §3663 and §3663A, by virtue of §3556. Discretionary restitution under §3563(b)(2) is available without regard to the limitations set forth in 3663(a) or 3663A(c)(1)(A). In other words, discretionary restitution as a condition of probation is available for a broader range of offenses. See *United States v. Dahlstrom*, 180 F.3d 677, 686 (5th Cir. 1999); *United States v. Love*, 431 F.3d 477, 480 (5th Cir. 2005). Hence, §3563 constitutes an alternative statutory basis for an order for payment of restitution.

9

## II.    <u>Whether the offense of conviction supports an award of restitution.</u>

Defendant next objects to the order of restitution on the grounds that he did not plead guilty to killing the whooping crane—only transporting its carcass. He argues that the offense of conviction, transporting, does not warrant an order of restitution.

"The general rule is that a district court can award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted." *United States v. Maturin,* 488 F.3d 657, 660–61 (5th Cir.2007). Relevant conduct cannot be considered in an award for restitution unless the defendant agrees in a plea agreement that restitution may be based on relevant conduct. *United States v. Benns*, 740 F.3d 370, 377 (5th Cir. 2014); *United States v. Campbell*, 552 Fed.Appx. 339, 345 (5th Cir. 2014), discussing cases.

The Court disagrees with Defendant that the restitution award goes beyond the bounds of the offense of conviction. The restitution compensates the victim, the State of Louisiana through the Department of Wildlife and Fisheries, for direct and proximate losses resulting from Constantin's admitted acts of shooting the bird, transporting its dead body, cutting off its legs, removing the transponders, and discarding the carcass and evidence.

10

The Second Circuit rejected a similar argument in *United States v. Bengis*. In that case, the defendants argued that South Africa was "not a victim of the conspiracy because the conspiracy to which the defendants pleaded guilty did not involve the illegal harvesting of the lobsters, only their importation to the United States with the knowledge that the lobsters had been obtained in violation of South African law." *Bengis*, 631 F.3d at 40. In disagreeing with the defendants' causation argument, the court reasoned:

> The defendants need not have personally harvested the lobsters in order to have deprived the South African government of its property right in the lobsters. By smuggling the lobsters out of South Africa knowing that they had been harvested unlawfully, defendants deprived the South African government of its right to seize and sell the poached lobsters. The defendants' conduct facilitated the illegal harvesting of the lobsters by providing access to the United States market and enabled the poaching to go undetected by the South African government by, for example, off-loading the overharvested lobster at night, under-reporting catch amounts to South African authorities, bribing officials, and submitting false export documents. In doing so, the defendants' criminal conduct "directly harmed" the South African government, which in turn makes South Africa eligible for restitution under the VWPA and MVRA.

*Id*. at 40-41.

Similarly, in *United States v. Butler*, the Tenth Circuit concluded that, because illegally shot deer were not tagged, Kansas was prevented from accurately managing its deer population, which could lead to overharvesting. *Butler*, 694 F.3d at 1184. By this same logic, Defendant's conduct of transporting the carcass to the juvenile's house, severing its legs with a knife to remove the transponders, and discarding the

11

knife, carcass, severed legs, and transponders in a crawfish pond and ditch overtly thwarted Louisiana and its partners' costly efforts to restore whooping cranes to the wild. Constantin's admitted conduct directly resulted in the state's inability to manage its whooping crane restoration program, by the very elimination of one of the investments into the potential procreation of whooping cranes in the wild. The costs for raising a replacement bird is not unreasonably attenuated from the convicted offense.

Defendant's semantics argument also fails upon consideration of the conduct condemned by the Lacey Act. As discussed by the Ninth Circuit in *United States v. Carpenter*, the act of shooting or killing a protected bird is not the pertinent crime in adjudicating Lacey Act violations. Rather, Congress intended the Lacey Act to punish the import, export, transport, sale, receipt, acquisition, or purchase of illegally taken wildlife. *United States v. Carpenter*, 933 F.2d 748, 750 (9th Cir. 1991). "In order to violate the Lacey Act a person must do something to wildlife that has already been 'taken or possessed' in violation of law…The bird must be taken before acquiring it violates the Lacey Act." *Id.* Hence, Constantin's act of transporting L5-15, already having been illegally killed (i.e. taken), violated the Lacey Act. As held by *Bengis*, *Butler*, and now this Court, Lacey Act violations result in compensable losses to the governmental agencies which spend hundreds of thousands of dollars to manage endangered species, like whooping cranes, the Lacey Act seeks to protect.

### III.   The Sufficiency of Defendant's Rule 11 Notice of Restitution.

Defendant's last objection to the order of restitution is that he had no notice

of it. F.R.Cr.P. Rule 11(b)(1) provides:

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>
> (K) the court's authority to order restitution

Regarding the foregoing instruction, the 1985 Amendment notes state:

> Because this new legislation contemplates that the amount of the restitution to be ordered will be ascertained later in the sentencing process, this amendment to Rule 11(c)(1) merely requires that the defendant be told of the court's power to order restitution. The exact amount or upper limit cannot and need not be stated at the time of the plea.

In *United States v. Smith*, the Fifth Circuit considered facts presenting

considerably less notice than in this case:

> [T]he plea agreement in this case said nothing about restitution. Furthermore, Smith's obligation to pay restitution was not clearly communicated during the Rule 11 colloquy...Although the district court told Smith that "restitution is appropriate," the prosecutor immediately responded that "I don't think there's a restitution section in the plea agreement." After stating that "I want to be sure we understand where we are on that," the district court changed the subject and did not resolve the issue.
>
> *United States v. Smith*, 528 F.3d 423, 424 (5th Cir. 2008) (citation and footnote omitted).

The court rejected the defendant's argument that Rule 11 notice was lacking and upheld the order for payment of restitution. *Id*. at 425.

In this case, although the plea agreement did not explicitly state that Constantin could be made to pay restitution, the agreement does state: "Any fine imposed as part of the Defendant's sentence will be made due and payable immediately, and any federal income tax refund received by the Defendant from the Internal Revenue Service while there is an outstanding fine and/or restitution shall be applied toward the fine and/or restitution award." (Rec. Doc. 44, p. 3).

Further, in his Sentencing Memorandum, **Defendant** relied upon an Eastern District of Texas case, *United States v. Trey Frederick*, a case in which the defendant was sentenced to pay restitution to the International Crane Foundation and the Texas Parks and Wildlife Foundation. (Rec. Doc. 39, p. 14-23). This Court advised Defendant from the outset of the Rule 11 colloquy that restitution was mandatory. (Rec. Doc. 61, p. 15). Constantin stated that he understood, and his counsel stated, "I think you do have the ability to order restitution in the case." (Rec. Doc. 61, p. 15-16). Indeed, prior to the Court's sentencing, Defendant's counsel argued for an imposition of restitution "to go towards education" as a part of the sentence. (Rec. Doc. 61, p. 31). Considering the foregoing exchange and Defendant's counsel's position up to the moment of sentencing, the Court finds that Defendant had adequate notice of the possibility of an order for payment of restitution. Regardless,

14

any perceived lack of Rule 11 notice was cured by this Court's giving the parties thirty days to brief the issue of restitution after the PSR was amended, twice, before entering a final judgment. Furthermore, this Court has indicated its intention to allow the defendant to challenge the figures offered by the Secretary of LDWF at a subsequent hearing after this Court rules on the objections. Accordingly, Defendant's argument in this regard fails. The Court finds that its order for restitution was authorized and warranted.

### IV.   <u>Amount of Restitution</u>

Defendant objects to the amount of restitution as unsupported by the evidence. "A court is not required to make explicit findings or provide a detailed analysis so long as the record provides adequate basis to support the restitution order in a manner that allows for effective appellate review." *United States v. Herrera*, 606 Fed.Appx. 748, 753 (5th Cir. 2015), citing *United States v. De Leon*, 728 F.3d 500, 507 (5th Cir. 2013).

The Court sentenced Constantin to pay $75,000 in restitution, an amount derived from the difference between the amount submitted by LDWF, $85,000 (the lowest of all proposed amounts from various sources already in the record), and the $10,000 fine imposed since it was also made payable to LDWF. Defendant argues the subsequent Declaration of Victim Loss and attached spreadsheet do not explain how LDWF arrived at the cost per bird. The Court acknowledges that the spreadsheet

lacks a fully detailed analysis, and thus, out of an abundance of caution, will allow Defendant the opportunity to challenge the figures provided in the spreadsheet including  the cross-examination of any appropriate witnesses as to the amount of restitution sought.

### Conclusion

For the foregoing reasons, the Court finds that restitution is authorized and warranted in this case; however, the Court will allow Defendant the opportunity to challenge the amount suggested in the PSR, as amended, and cross-examine any appropriate witnesses as to the amount of loss the State sustained due to Constantin's actions.

THUS DONE in Chambers, Lafayette, Louisiana on this 29th day of September, 2020.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE